UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ronald Gordon Smythe,

           Plaintiff,

v.

City of Onamia and Robert L. Matzke,
acting in his individual capacity as a
Chief of Police of the Onamia Police
Department,

           Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-cv-03149 ADM/LIB

---

Brandon T. McDonough, Esq., McDonough & Nowicki PLLC, Thomas J. Lyons, Esq., Lyons Law Firm, P.A., and Thomas J. Lyons, Jr., Esq., Consumer Justice Center, P.A., on behalf of Plaintiff.

Jon K. Iverson, Esq., and Susan M. Tindal, Esq., Iverson Reuvers Condon, on behalf of Defendants.

---

## I.  INTRODUCTION

On April 16, 2013, the undersigned United States District Judge heard oral argument on Defendants City of Onamia (the "City") and Robert L. Matzke's Motion for Dismissal and/or Summary Judgment [Docket No. 29]. The Court also heard argument on Plaintiff Ronald Gordon Smythe's Motion to Amend the Pro Se Complaint [Docket No. 39]. For the reasons stated herein, Smythe's motion for leave to amend is granted, and the City and Matzke's ("Defendants") motion is denied.

## II. BACKGROUND

### A. Motion to Amend

On December 20, 2012, Smythe filed a pro se complaint against the City, Matzke, the Minnesota State Patrol, the County of Mille Lacs, the County of Crow Wing, and John and Jane Does. Compl. [Docket No. 1]. Since then, counsel has represented Smythe and his claims against all parties except the City and Matzke have been resolved.

On March 5, 2013, the remaining Defendants filed the present motion to dismiss the Complaint and/or seek summary judgment.

On March 26, 2013, Smythe's counsel filed a motion for leave to amend the complaint. Smythe argues the Court should allow amendment in lieu of dismissal, as he filed his original complaint without counsel, and obtained counsel only after the deadline to amend had passed. Pl.'s Mem. Supp. Mot. to Amend [Docket No. 41] ("Pl.'s Mot. Amend") 2-3. In the Complaint, Smythe alleged broad violations of the Federal Driver's Privacy Protection Act ("DPPA" or the "Act") and other privacy-related claims. See Compl. In his proposed Amended Complaint, Smythe alleges a single claim against Matzke, for violations of the DPPA. See McDonough Decl. [Docket No. 42] Ex. 1 ("Amended Complaint") ¶¶ 262-67. He also alleges the City is liable for Matzke's violations of the DPPA under the doctrine of respondeat superior. Id. ¶¶ 268-72.

Once the 21-day time limit has passed, Rule 15(a) of the Federal Rules of Civil Procedure states a plaintiff may only amend his complaint with consent of the other party or leave of the court. However, the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15. "[O]nly limited circumstances justify a district court's refusal to grant leave to

amend pleadings: undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987).

Of these exceptions, Defendants raise undue delay, unfair prejudice, and futility as bases for denying Smythe's request for leave to amend. Defendants argue Smythe has "no justifiable reason" for his requested amendment, as Smythe already knew the facts raised in the Amended Complaint and thus should have raised them in the first instance. Defs.' Mem. Opp. Amend. [Docket No. 53] ("Defs.' Opp.") 4. They further argue amendment would prejudice their motion to dismiss or seek summary judgment. Finally, Defendants argue amending the Complaint would be futile, as the Amended Complaint still fails to state a DPPA claim.

Because Smythe began this action pro se, he will be allowed to amend the Complaint. His original pro se Complaint, even liberally construed, lacked several important factual details and did not clearly identify the laws under which Smythe sought relief. After his time to amend the Complaint under Rule 15(a)(1) passed, and also after Defendants filed their present motion, Smythe obtained counsel. See Pl.'s Mot. Amend at 2-3. Shortly after assuming representation, Smythe, through his counsel, dismissed extraneous parties from the action, responded to Defendants' motion, and filed the proposed Amended Complaint. This conduct does not demonstrate undue delay; it indicates prompt action to organize Smythe's legal strategy and proceed in good faith.

Amending the Complaint does not unfairly prejudice Defendants. The Amended Complaint supplements the factual details already within the legal framework of Smythe's original claims. For instance, Smythe originally attached several emails and documents to his

3

Complaint; the Amended Complaint provides context for these documents and for Smythe's interactions with Matzke and Foster. These allegations focus the issues for both the Court and the parties, and better enable Defendants to respond to Smythe's claims. That Defendants raise the same DPPA arguments against amendment as they do in their memoranda supporting dismissal further demonstrates the lack of unfair prejudice, as it indicates the core legal issues have not changed. Smythe's amendment is also not futile. The Amended Complaint expands Smythe's factual allegations and provides a more coherent understanding of the already-raised legal issues.

As a result, Smythe's motion for leave to amend is granted, and the Amended Complaint is accepted. Because the Amended Complaint does not alter the arguments of either party, the Defendants' motion is next addressed.

**B. Facts Alleged in the Amended Complaint**

Smythe and Matzke have known each other since early childhood.[1] Am. Compl. ¶¶ 20-21. They are now in their 50's. Id. Sometime prior to 2003, Smythe met Matzke's friend, Shawn Fish-Foster (referred to as "Foster"). In Smythe's view, Foster immediately disliked him and an unfriendly relationship developed. Id. ¶¶ 23-26. By 2003, Smythe had moved onto Matzke's property, living in a cabin separate from Matzke's residence. At the time, Smythe worked at the Brainerd International Raceway, performing electrical work. Id. ¶¶ 27-40. Matzke was, and is, the Onamia Chief of Police. Id. ¶ 17.

On July 13, 2003, the raceway's owner canceled his electrical work contract with Smythe, citing an anonymous email the owner received from "WellGetYa@aol.com." The email

---

[1] As discussed below, all facts alleged in the Amended Complaint are taken as true.

included Smythe's personal information, including his address, date of birth, and driver's license number, and claimed Smythe was wanted by law enforcement in several states. The email also threatened to sue the owner if he did not cancel his contract with Smythe. Id. ¶¶ 41-49. Smythe provided his copy of this email to Matzke, who discouraged him from investigating further. Id. ¶¶ 52-54.

Later, Smythe found a piece of paper posted on his door, dated July 11, 2003. The paper included Smythe's personal information, and had Matzke's business card attached to it. When Smythe asked Matzke about the paper, Matzke told Smythe he had retrieved the information because he was "curious." Id. ¶¶ 69-77, Ex. 1. Fearful, Smythe moved off of Matzke's property. Id. ¶ 80. Smythe later investigated the internet protocol address used to send the July 13 email and concluded Foster had sent it, and that Matzke had provided Foster with Smythe's personal information. Id. ¶¶ 81-82. Next, a period of five years transpired apparently without events significant to this case having occurred.

In 2009, Smythe lived in Minneapolis, Minnesota. After finding some problematic items on his credit report, Smythe contacted Matzke, believing Matzke could help clear his record. On July 19, 2009, Matzke replied he could not. Id. ¶¶ 96-99. Two days later, Smythe began receiving hostile emails from Foster. At least one of the emails indicated Foster knew where Smythe lived. Id. ¶ 100. Smythe filed a police report, and moved to Bloomington, Minnesota. Smythe eventually obtained a civil harassment restraining order against Foster. Id. ¶¶ 113, 124.

Smythe and Matzke began exchanging emails around that time. In July 2009, Matzke

5

sent Smythe two emails.[2] In the emails, Matzke admitted forwarding Smythe's email address to Foster. Matzke also told Smythe he had played no role in Smythe's problems, and that Foster had most likely harassed Smythe out of a desire to antagonize. Matzke also expressed a desire to be left alone. Id. ¶¶ 135-39.

In October 2009, Matzke again sent Smythe an email. In the email, Matzke said that any emails Foster sent came from boredom and were most likely a prank. Matzke also wrote that he preferred to "stay out of things that did not involve [him]." Id. ¶ 141.

On December 2, 2009, the City of Bloomington police department—while conducting an investigation of Foster—contacted Matzke as a potential witness to Foster's conduct. Matzke informed the Bloomington police he believed Smythe had blown the situation out of proportion, but that it would not surprise him if Foster had sent threatening emails. Id. ¶¶ 142-44.

Later that month, on December 31, 2009, Matzke retrieved Smythe's personal information from the Minnesota Department of Public Safety (the "DPS"). Am. Compl. Ex. 2 (DPS records). The DPS maintains access to several state and federal criminal records databases, as well as the Minnesota Driver and Vehicle Services ("DVS") division of the DPS. Matzke, as a police officer for the City of Onamia, could access Smythe's records, including his DVS records, through the DPS database.

In the first half of 2010, Smythe claims he witnessed Foster and potentially other, unidentified persons watching Smythe outside of his home in Bloomington. Am. Compl. ¶¶ 146-64. Smythe received a call from Matzke's son, who wanted to invite Smythe to his graduation

---

[2] The content of Smythe's communications with Matzke is not addressed in the Amended Complaint.

party. The call aroused Smythe's suspicion, because Matzke's son somehow knew Smythe had moved to Bloomington. Id. ¶¶ 165-72.

On May 9, 2011, Smythe called the Office of the Governor of Minnesota to discuss the continued harassment he was experiencing from Foster and possibly others. According to Smythe, he told an intern at the office that he believed Matzke had facilitated threats on his life. The Governor's Office reported the call to Capitol Security, the agency responsible for protecting the Minnesota state capitol complex. The Governor's Office understood Smythe as threatening Matzke during his call. Capitol Security, in turn, informed Matzke about a threat against him. Id. ¶¶ 182-85. Smythe "does not recall" making a threat against Matzke during this phone call, and "does not believe" he did so. Id. ¶ 183.

On the same day as Smythe's phone call to the Governor's Office, Matzke again retrieved Smythe's DVS records. Am. Compl. Ex. 2.

On October 10, 2011, Smythe called the Crow Wing County Sheriff's Office to discuss Foster's harassment. And, Smythe again contended Matzke had facilitated Foster's misconduct. Id. ¶¶ 186-87. On the same day, Matzke again retrieved Smythe's information from the DPS. See Id. at Ex. 2.

In 2012, Smythe obtained a record documenting the various requests made for Smythe's personal information. Smythe learned about Matzke's four retrievals of Smythe's DVS records at that time. Id. ¶¶ 193, 201.

### III. DISCUSSION

**A. Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to

dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted). However, the factual allegations must "raise a right to relief above the speculative level," and push claims "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In other words, the complaint must establish more than a "sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. In doing so, the court must draw reasonable inferences in the plaintiff's favor, but it need not make unreasonable inferences or accept unrealistic assertions. See Brown v. Medtronic, Inc., 628 F.3d 451, 461 (8th Cir. 2010).

## B. DPPA and Law Enforcement Exception

### 1. The DPPA

Smythe's primary claim against Defendants alleges violations of the DPPA. The DPPA allows a private person to bring civil suit against any "person who knowingly obtains, discloses, or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter . . . ." 18 U.S.C. § 2724(a). As defined by the Act, "personal information" means basic identification information including name, photograph, address, social security number, and driver's license number. See id. § 2725(3). The Act lists numerous permitted uses, including "use by any government agency, including any court or law enforcement agency, in carrying out

8

its functions . . . ." Id. § 2721(b)(1). The few courts to have ruled on the issue have held the plaintiff has the burden of proving each element of the civil claim, including whether the retrieval was for a "purpose not permitted" by the Act. See Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A., 525 F.3d 1107, 1110-14 (11th Cir. 2008); Maracich v. Spears, 675 F.3d 281, 299-300 (4th Cir. 2012); Howard v. Criminal Info. Servs., Inc., 654 F.3d 887, 890-91 (9th Cir. 2011).

### 2. Matzke's purpose in retrieving Smythe's records

Only a few decisions address a private DPPA suit brought against a law enforcement officer. Generally, courts have found it to be a permissible use when a police officer retrieves motor vehicle records as part of traditional law enforcement duties, such as investigating a crime or conducting an arrest. See, e.g., Walke v. Cullen, 491 F. App'x 273, 275-76 (3d Cir. 2012) (retrieval of records in connection with criminal investigation fell under DPPA law enforcement exception).

However, when an officer retrieves motor vehicle records outside of the typical law enforcement contexts, courts have more closely evaluated the officer's use of the retrieved information. In Parus v. Cator, No. 05-C-0063, 2005 WL 2240955, at *1-2 (W.D. Wis. Sept. 14, 2005), a private citizen asked the defendant police officer for the plaintiff's address, purportedly to learn more about a car for sale. Suspecting the request was a pretext to learn more about the plaintiff for nefarious purposes, the officer retrieved the information but refused to say more than that the plaintiff was "a local guy." Id. at *1. The court denied summary judgment against the plaintiff's DPPA claim. Id. at *5. In doing so, the court found that simply acquiring the information without a permitted purpose could give rise to a DPPA claim, and a genuine dispute

9

existed regarding whether the officer had been performing a law enforcement function at the time of retrieval. Id.

Courts have found DPPA liability where an officer's retrieval of information was clearly for a personal purpose or for outright misuse. In Schierts v. City of Brookfield, 868 F. Supp. 2d 818, 819-20 (E.D. Wis. 2012), the plaintiff brought DPPA claims after a police officer retrieved the plaintiff's personal information and then provided it to the plaintiff's ex-girlfriend as a favor, saying, "[y]ou didn't get this info from me." The court granted partial summary judgment for the plaintiff, finding a clear violation of the DPPA because the officer did not retrieve the information for any use permitted by § 2721(b). Id. at 820-21. In Menghi v. Hart, 745 F. Supp. 2d 89, 96-97 (E.D.N.Y. 2010), aff'd, 478 F. App'x 716, the defendant police officer lawfully obtained the plaintiff's motor vehicle records during an arrest but then retrieved the plaintiff's information three more times for the purpose of making threatening and harassing phone calls. Id. The jury found the officer liable under the DPPA, and the court denied a motion for a new trial. Id. at 103-04.

With the exception of misuse, the DPPA's legislative history indicates a desire to preserve broad discretion for law enforcement agents to retrieve information in the course of their duties. Congress enacted the DPPA as part of legislation designed to prevent stalking, harassment, and related crimes. See Margan v. Niles, 250 F. Supp. 2d 63, 68-69 (N.D.N.Y. 2003) (citations omitted). Essential to this purpose was the Act's law enforcement exception. This exception "'provides law enforcement agencies with latitude in receiving and disseminating this personal information,' when it is done 'for the purpose of deterring or preventing crime or other legitimate law enforcement functions.'" Senne v. Vill. of Palatine, Ill., 695 F.3d 597, 607-

10

08 (quoting 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen. Thomas Harken)). In short, the legislative history reflects law enforcement's "legitimate need for information contained in state records and the authority to use that information to effectuate the purposes identified in the Act without fear of liability." Id. at 608.

Smythe alleges Matzke violated the DPPA on three occasions: December 31, 2009, May 9, 2011, and October 10, 2011.[3] On each of these dates, Matzke retrieved Smythe's personal information from DPS, which included Smythe's motor vehicle records. Smythe alleges Matzke acquired Smythe's information for personal reasons, and not for any law enforcement purpose. In particular, Smythe argues Matzke did not believe Foster had made "true threats" against Smythe, and that Matzke did not believe his conflict with Foster was a "serious matter." Pl.'s Opp. Mot. Summ. J. [Docket No. 45] 3, 7. Smythe concedes that while Matzke may have been told about a threat against him on May 9, 2011, Matzke had no knowledge of any threats on or around December 31, 2009, or October 10, 2011. In addition, Smythe argues generally that Matzke knew Smythe's approximate whereabouts through the years, and thus had no reason to retrieve DPS records.

Defendants respond Smythe has failed to state a claim because he has not alleged an improper use of the DPS records. Citing several appellate decisions, Defendants argue the DPPA focuses on the ultimate use of the retrieved motor vehicle records, not simply on the act of

---

[3] Although Smythe actually describes four instances of record retrieval by the City and/or Matzke, one of these instances occurred in 2003 and is thus well outside the statute of limitations. Am. Compl. ¶¶ 69-77; see also Hurst v. State Farm Mut. Auto Ins. Co., No. 10-1001-GMS, 2012 WL 426018, at * 9 (D. Del. Feb. 9, 2012) (holding because DPPA provides no statute of limitation, the general four year limit for federal statutes applies); and 28 USC 1658 (2002) (establishing four year limit).

obtaining the records by themselves. See Cook v. ACS State & Local Solutions, Inc., 663 F.3d 989, 994 (8th Cir. 2011) (". . . [I]t is apparent from the statute as a whole that the DPPA is concerned with the ultimate use of drivers' personal information, not how that information is obtained."); see also Graczyk v. West Publ'g Co., 660 F.3d 275, 279 (7th Cir. 2011) (holding the DPPA "is concerned with the ultimate use or uses to which personal information contained in motor vehicle records is put"). Thus, Defendants argue, Smythe has not alleged a DPPA violation because he has alleged no misuse of Smythe's information. In other words, the Amended Complaint raises no more than the "sheer possibility" of improper conduct by alleging Matzke retrieved Smythe's DPS records for "personal interest." Defs.' Opp. 8.

Taking its allegations as true, the Amended Complaint has stated a viable claim under the DPPA. Defendants argue Matzke did not violate the DPPA because he did not retrieve Smythe's information for an improper purpose. But this misstates the law. An officer who retrieves motor vehicle records has violated the DPPA unless he or she has done so for a permitted purpose, such as for a law enforcement function. In other words, a person may still violate the DPPA if he retrieves motor vehicle records and does not misuse the information; simply retrieving records without a permitted purpose is a violation. By way of illustration, a police officer might retrieve a celebrity's motor vehicle records out of curiosity or a desire to learn the celebrity's age. By doing so, the officer has obtained a motor vehicle record under § 2724(a), but has done so without one of the permitted purposes listed in § 2721(b). As a result, this simple act of retrieval, without any further action, would violate the DPPA. Similarly, here, Smythe alleges Matzke retrieved his personal information out of curiosity or for some personal interest in light of their long and contentious history. Even if Matzke did not go on to misuse Smythe's

information, these allegations plausibly state a DPPA violation.

Focusing on the ultimate use of the retrieved information, as Defendants urge, is not dispositive of the claim. In Cook and Graczyk, the appellate courts affirmed decisions denying liability under the DPPA. The defendants in those cases obtained motor vehicle records in bulk and stockpiled them, holding them for permissible resale in the future. See, e.g., Cook, 663 F.3d at 994. The court held that the initial obtaining of motor vehicle records did not violate the DPPA, as the defendant's "bulk obtainment was not an end in itself." Id. Instead, the potential and proper resale of this information was the ultimate permissible use. Id. at 994-97. Unlike in Cook, Smythe alleges Matzke obtained his motor vehicle records and then did nothing except review them for his personal interest; obtaining Smythe's records was the end in itself. The Amended Complaint alleges Matzke did not ultimately use Smythe's records for a traditional law enforcement function or any other purpose permitted by the DPPA.

The law enforcement exception decisions cited above also justify a closer examination of Matzke's purpose. At this stage, Smythe plausibly alleges that Matzke retrieved Smythe's information for something other than a law enforcement function on at least one occasion: December 31, 2009. At that time, Smythe alleges Matzke knew Smythe's approximate whereabouts and had no personal safety concerns; Smythe also details a long and complicated history between the two. These facts plausibly establish that Matzke retrieved Smythe's records out of curiosity or other personal interest. However, on May 9, 2011, as Smythe concedes in the Amended Complaint, Capitol Security informed Matzke of a threat made against him by Smythe. At that point, Matzke's retrievals of Smythe's information could conceivably fall within the law enforcement function, as Matzke's own safety became a concern. As discussed below, deciding

13

that issue at this stage is premature, especially where Smythe has stated at least one plausible violation of the DPPA.

As discussed above, a person may violate the DPPA without actually distributing or otherwise actively misusing personal information. However, how a defendant uses information retrieved in violation of the DPPA may affect the severity of the consequences for that violation. The DPPA states that a court may award "actual damages, but not less than liquidated damages in the amount of $2,500" as a remedy for violating the Act. 18 U.S.C. § 2724(b)(1). As a result, where a defendant retrieves information in violation of the DPPA but does not put the information to some damaging purpose, the plaintiff's actual damages will most likely be less than the liquidated damages amount, meaning the plaintiff will not recover more than the statutory minimum.

**C. Summary Judgment is Premature**

In the alternative to their motion to dismiss, Defendants move for summary judgment. By attaching several affidavits and related documents, Defendants argue Matzke had a proper purpose in retrieving Smythe's information. Namely, Matzke feared for the safety of his family and himself, and if he was not the chief of police, he would have called the police to investigate Smythe. By informally investigating Smythe on his own behalf, Matzke was thus performing a law enforcement function.

Smythe responds with his own affidavit, stating he did nothing to threaten Matzke around December 2009, thus supporting his argument that Matzke's contemporaneous record retrieval was unwarranted. Smythe also requests a Rule 56(d) continuance of summary judgment. Smythe notes the parties have not yet conducted any discovery, and submits a supporting

14

affidavit in which he states the parties should conduct discovery regarding: their communications with each other; whether Matzke took any official police action in connection with his record retrievals; and the substance and authentication of the DPS records Smythe retrieved.

Based on the issues raised in the parties' respective summary judgment arguments and evidence, a ruling on summary judgment is inappropriate at this time. The nature of Smythe's communications with Matzke may demonstrate Matzke acted with or without a permissible purpose in retrieving Smythe's motor vehicle records, and the parties dispute the nature and number of their communications. Matzke also states he discussed Smythe's potential threats with other law enforcement officers, but does not corroborate or detail these communications; nor does he submit any evidence of his steps to investigate Smythe's threats. It thus cannot be determined as a matter of law that Matzke was performing a law enforcement function in December 2009 or later.[4] Because the parties have not yet conducted any formal discovery, Defendants' motion for summary judgment will be denied without prejudice to allow a brief, limited-in-scope period of fact-finding. See Ray v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010) ("[S]ummary judgment is proper only after the nonmovant has had adequate time for discovery.") (quoting In re TMJ Litigation, 113 F.3d 1484, 1490 (8th Cir. 1997)).

---

[4] For this reason the Court does not reach whether Matzke is entitled to qualified immunity at this time.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Amend the Pro Se Complaint [Docket No. 39] is **GRANTED**.

2. Defendants' Motion for Dismissal and/or Summary Judgment [Docket No. 29] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 5, 2013.