UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ronald Gordon Smythe,

        Plaintiff,

v.

City of Onamia and Robert L. Matzke,
acting in his individual capacity as a
Chief of Police of the Onamia Police
Department,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-3149 ADM/LIB

---

Brandon T. McDonough, Esq., and Nicholas R. Nowicki, Esq., McDonough & Nowicki PLLC, Minneapolis, MN; Thomas J. Lyons, Esq., Lyons Law Firm, P.A., Vadnais Heights, MN; and Thomas J. Lyons, Jr., Esq., Consumer Justice Center, P.A., Vadnais Heights, MN, on behalf of Plaintiff.

Jon K. Iverson, Esq., and Susan M. Tindal, Esq., Iverson Reuvers Condon, Bloomington, MN, on behalf of Defendants.

---

## I.  INTRODUCTION

On June 25, 2014, the undersigned United States District Judge heard oral argument on Defendants City of Onamia (the "City") and Robert L. Matzke's Motion for Partial Judgment on the Pleadings [Docket No. 99]. Plaintiff Ronald Gordon Smythe opposes the motion. For the reasons stated herein, Defendants' motion is granted.

## II.  BACKGROUND

The allegations underlying this dispute have largely been summarized in a previous order and will not be repeated here. See Order, June 5, 2013 [Docket No. 57]. On December 20,

2012, Smythe filed a pro se Complaint against Matzke and the City.[1]  See Compl. [Docket No. 1].  Shortly thereafter, Smythe obtained counsel and also obtained leave to amend the Complaint.  Order, June 5, 2013.  In short, Smythe alleges he and Matzke have a long and contentious relationship and that Matzke violated the Driver's Privacy Protection Act ("DPPA") by retrieving Smythe's driver's record.  In the First Amended Complaint, Smythe alleged three specific instances on which Matzke retrieved Smythe's driver information for illegitimate reasons.  See 1st Am. Compl. [Docket No. 58].  The retrievals occurred between December 2009 and May 2011.

Through discovery, Smythe learned of one additional record retrieval conducted by Matzke in July 2009.  See Brandon McDonough Decl. [Docket No. 92] Ex. 5.  Smythe amended his complaint a second time to allege this retrieval as a DPPA violation.  Smythe also included a broader allegation concerning DPPA violations both known and unknown.  See 2d Am. Compl. [Docket No. 77] ¶ 270.  Thereafter, Smythe learned from the Minnesota Driver and Vehicle Services division ("DVS") of the Minnesota Department of Public Safety ("DPS") that Matzke had retrieved Smythe's driver records on 30 additional occasions between July 2004 and August 2008.  McDonough Decl. Ex. 3.[2]

On May 1, 2014, Defendants filed the present motion for a partial judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  Defendants anticipate that

---

[1] The original Complaint named several additional defendants, who were later voluntarily dismissed.

[2] Although the DVS audit provided to Smythe identifies a different City employee as the retrieving individual, Defendants concede Matzke appears to have conducted the 30 retrievals.  See Pl.'s Mem. Opp'n to J. on Pleadings [Docket No. 105] ("Pl.'s Opp'n") 4, n.3.

Smythe will attempt to pursue liability under the DPPA for all 34 record retrievals identified through discovery. Defendants argue the DPPA's statute of limitations bars the majority of these retrievals.

### III. DISCUSSION

#### A. Motion for Judgment on Pleadings Standard

In considering a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, the court views "all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party." Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008). Judgment on the pleadings is appropriate "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002). This is the same standard used to resolve a motion to dismiss under Rule 12(b)(6). Ashley Cnty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

#### B. DPPA Statute of Limitations

The DPPA does not set forth a specific statute of limitations, therefore, the general four-year statute of limitations for federal statutes applies. See Rasmusson v. Chisago Cnty., --- F. Supp. 2d. ----, No. 12-632, 2014 WL 107067, at *11 (D. Minn. Jan. 10, 2014). The general statute of limitations states "a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).

Defendants argue a DPPA claim accrues upon the occurrence of an allegedly-wrongful record retrieval, and not upon the discovery of the retrieval by a plaintiff. The United States

3

Supreme Court, Defendants argue, has recently held that claims generally accrue under the "occurrence" rule, and not the "discovery" rule.  See Gabelli v. S.E.C., 133 S. Ct. 1216, 1220-21 (2013).  In Gabelli, the Court reviewed a civil penalties case brought by the Securities and Exchange Commission (SEC) under a securities fraud statute.  The securities statute, in turn, was subject to 28 U.S.C. § 2462, a general statute of limitations for government enforcement actions. Section 2462 states that the time limit for enforcement actions begins running "from the date when the claim first accrued."  In defining the word "accrued," the Supreme Court held that "[i]n the common parlance, a right accrues when it comes into existence."  Gabelli, 133 S. Ct. at 1220 (quoting United States v. Lindsay, 346 U.S. 568, 569 (1954)).  Thus, the "'standard rule' is that a claim accrues when the plaintiff has a complete and present cause of action."  Id. (quotation omitted).  To whatever extent the discovery rule was the previous default, Defendants argue, Gabelli makes the occurrence rule the new standard.  In further support of their position, Defendants cite decisions from this district in which judges have applied the occurrence rule to the DPPA.  See, e.g., Rasmusson, 2014 WL 107067, at *11 (citing additional decisions). Because Smythe filed this action on December 20, 2012, Defendants seek dismissal of all DPPA liability based on retrievals occurring before December 20, 2008.

Smythe argues Defendants have misapplied Supreme Court precedent, and that the other decisions of this district supporting Defendants' position are distinguishable.  Addressing Gabelli, Smythe argues the Supreme Court's holding applied only to the specific statute of limitations for government enforcement actions, and not the general limit stated in § 1658(a). Conversely, the Eighth Circuit Court of Appeals has held that the discovery rule is the default method of accrual in federal question cases.  See Comcast of Ill. X v. Multi-Vision Elecs., Inc.,

491 F.3d 938, 944 (8th Cir. 2007). Because <u>Gabelli</u> had limited application, Smythe argues, the Eighth Circuit's adoption of the discovery rule remains valid and should apply here. Addressing the decisions from this district favoring Defendants' position, Smythe argues these cases are distinguishable based on their different facts. Smythe argues that in the past few years, knowledge about how to investigate and prosecute DPPA violations has expanded and many plaintiffs are public figures who have easily retrievable DPS records. When Smythe first began investigating DPPA violations against him, he states his ability to obtain information from DPS "was not so easy." Pl.'s Opp'n at 14. Applying the occurrence rule to the "newer" DPPA claimants may make sense, Smythe argues, but he should be given the benefit of the traditional discovery rule.

  As this Court and other courts in this district have held, <u>Gabelli</u> appears to have overruled, at least in part, the Eighth Circuit's preference for the discovery rule. Smythe's argument that <u>Gabelli</u> applies only in limited circumstances ignores the specific question the Court addressed. The Court primarily addressed how to interpret the word "accrued" under a general statute of limitations; the Court did not limit its holding to government enforcement actions or securities fraud. It is significant that the <u>Gabelli</u> analysis relied not only on securities law, but also upon decisions reviewing federal tort law under 42 U.S.C. § 1983 and pension plan liability under ERISA. <u>See</u> <u>Gabelli</u>, 133 S. Ct. at 1220 (citing <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007), <u>and</u> <u>Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.</u>, 522 U.S. 192, 195-96 (1997)). <u>Gabelli</u> also cited legal dictionaries defining "accrues" as when a claim comes into existence and can be enforced. <u>Id.</u> at 1221 (citations omitted). If the Court had intended <u>Gabelli</u> to apply only to government enforcement actions, it would not have

drawn on such wide-ranging sources, nor would it have stated a general interpretation for the word "accrued." The Court's reasoning in Gabelli is equally applicable to § 1658.

Assuming the occurrence rule is the presumptive default, Smythe also fails to demonstrate why DPPA claims might overcome this presumption and qualify for the discovery rule. As other judges in this district have noted, the question of whether the discovery rule applies to DPPA claims is a difficult one. See, e.g., Potocnik v. Carlson, --- F. Supp. 2d ----, No. 13-2093, 2014 WL 1206403, at *10 (D. Minn. Mar. 25, 2014). However, the purpose of the DPPA ultimately weighs against the discovery rule. Congress enacted the DPPA to prevent stalking, harassment, and related harms. See Margan v. Niles, 250 F. Supp. 2d 63, 68-69 (N.D.N.Y. 2003) (summarzing DPPA history). In that context, a DPPA violation will typically occur in temporal proximity to the more "knowable" harms Congress sought to prevent. Kost v. Hunt, 983 F. Supp. 2d 1121, 1129 (D. Minn. 2013). Thus, the occurrence rule would fairly and definitively draw a border around DPPA claims, because the harms targeted by the DPPA "would readily be knowable in conjunction with, or soon after, the DPPA violation." Id. at 1129.

Conversely, applying the discovery rule could allow liability to be indefinitely extended when a DPPA violation occurs but is not connected to one of the harms targeted by Congress. In such cases, the claimant has not been noticeably injured by or in connection with the DPPA violation, meaning the claimant does not, nor has any reason to, know of the DPPA violation. Under the discovery rule, the statute of limitations would have no meaning, as this type of claim could remain perpetually viable. See Potocnik, 2014 WL 1206403, at *11. Congress almost certainly did not intend such a result. See id. The analysis set forth by other judges in this

district remains persuasive, and the occurrence rule will be applied to the DPPA here.

Smythe's argument that the particular facts of his case should justify the application of the discovery rule is similarly unavailing. Statutory interpretation is a matter of law, and the outcome in general does not rely on the facts of any one case. See, e.g., Wingert & Assocs., Inc. v. Paramount Apparel Int'l, Inc., 458 F.3d 740, 743 (8th Cir. 2006) ("We review questions of statutory interpretation de novo."). Whether Smythe has alleged facts different from those of other claimants under the DPPA should not alter the interpretation of § 1658(a). In addition, as discussed below, Smythe has not alleged fraudulent concealment or some other specific circumstance that might warrant tolling the statute of limitations in this case.

## C. Tolling of Statute of Limitations

In the alternative to his discovery rule argument, Smythe argues the statute of limitations should be equitably tolled. Smythe, initially acting pro se, investigated his claims in good faith but lacked the knowledge to properly obtain records from the DPS and DVS. As a result, he encountered several setbacks that stalled and obfuscated his search.[3] See, e.g., McDonough Decl. Ex. 2 (including letters notifying Smythe of notarization and signature deficiencies). The equities in this case, Smythe argues, require tolling the statute of limitations to avoid the injustice of eliminating 90% of the alleged DPPA violations.

Smythe has not alleged facts sufficient for equitable tolling. As Smythe admits, a claimant is only eligible for equitable tolling where he has established: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."

---

[3] At oral argument, Smythe clarified that he is not alleging the DPS or Defendants engaged in fraudulent concealment.

7

Johnson v. Hobbs, 678 F.3d 607, 610 (8th Cir. 2012) (quotation omitted).  Equitable tolling offers "an exceedingly narrow window of relief" and should be used "only in exceptional circumstances."  Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 675 (8th Cir. 2009) (quotations omitted).  Smythe's difficulties requesting information, while understandable, do not rise to the "extraordinary" level required for tolling.  See Kost, 983 F. Supp. 2d at 1129-30 (reaching same conclusion in response to similar arguments).  Smythe's attempt to "create an end-run around" the application of the discovery rule is rejected.  Id.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants City of Onamia and Robert L. Matzke's Motion for Partial Judgment on the Pleadings [Docket No. 99] is **GRANTED**.  All alleged DPPA violations occurring before December 20, 2008 are dismissed as stated herein.

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 19, 2014.